Jeannette C. Neary, a/k/a Abortion, Birth Control and Pregnancy Testing Clinic, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. The Bell Telephone Company of Pennsylvania et al., Intervenors.

Argued February 2, 1983, before President Judge CRUMLISH, JR. and Judges MACPHAIL and DOYLE, sitting as a panel of three.

*Mary Alice Duffy,* for petitioner.

*Charles F. Hoffman,* Chief Counsel, with him *George H. Buchanan,* Assistant Counsel, and *Louise R. Knight,* Deputy Chief Counsel, for respondent.

*Donald F. Clarke,* with him *John W. Berresford,* for intervenor, Bell Telephone Company of Pennsylvania.

*Charles E. Rainey, Jr.,* Assistant Consumer Advocate, with him *Martha W. Bush,* Assistant Consumer Advocate and *Walter W. Cohen,* Consumer Advocate, for intervenor, Office of Consumer Advocate.

*Kathryn Kolbert,* with her *Susan Cary Nicholas,* for intervenor, Donna Bonacci and CHOICE.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 6, 1983:

Jeannette C. Neary appeals a Public Utility Commission order directing Bell Telephone Company of Pennsylvania to, *inter alia,* delete the listing of her organization, "Abortion, Birth Control and Pregnancy Testing Clinic," from the white pages of all its subsequent telephone directories. We reverse.

This action commenced when Donna Bonnacci and CHOICE (Concern for Health Options: Information, Care and Education), respondents here, filed a formal complaint with the Commission, alleging that the director listing, "Abortion, Birth Control, and Pregnancy Testing Clinic," was deceptive, misleading and confusing to the public and that Bell's publication of the listing therefore violated Bell Tariff, Pa. PUC No. 1, §5.A.1.[1] The tariff read in full as follows:

> A listing in a telephone directory being merely for the convenience of the public in associating

---

[1] Tariffs have the force of law, *Stiteler v. Bell Telephone Co.,* 32 Pa. Commonwealth Ct. 319, 379 A.2d 339 (1977), and, thus, the complaint satisfied the procedural requirement that a violation of a specific law or order be alleged. *See* 52 Pa. Code §3.122(a)(4). The complaint did not allege violation of any other law.

a listed party with the proper call number, only those listings will be allowed which will lead to positive and particular identification of the listed party. Therefore, only the following will be accepted as listings: The real names of individuals, partnerships, and corporations, and/ or the names under which individuals, partnerships, and corporations lawfully conduct their businesses; provided, however, the Telephone Company will reject or discontinue as listings, names which in the opinion of the Telephone Company will mislead or deceive the public or confuse the public in identifying the listed party. The Telephone Company, upon notification to the subscriber, will discontinue any listing which includes therein the trade name of another upon notice to the Telephone Company from the party controlling the proprietary right to such trade name of its unauthorized use.

In response, Bell and the Commission trial staff filed a motion to dismiss the complaint, contending that the tariff neither required nor empowered Bell to investigate or delete directory listings for their misrepresentation, intentional or otherwise, of the nature or quality of the listee's business activities, but only for their misrepresentation of the listee's identity. The Administrative Law Judge (ALJ) agreed and dismissed the complaint but, on appeal, the Commission reversed and remanded for a hearing on the merits. At this point, Neary was granted permission to intervene, which she had previously been denied, and following a hearing the ALJ determined that the listing misrepresented the nature and quality of her organization's services, but did not confuse as to the organization's identity, and ordered Bell to

delete the listing pursuant to its tariff. The Commission affirmed.

Neary now argues that the Commission erred in interpreting Bell's tariff. We agree. The tariff clearly states that telephone directory service is provided only for the purpose of assisting "the public in associating a listed party with the proper call number" and does not give the slightest indication that the service is intended to apprise the public of the nature or quality of the listee's activities. The directory white pages, in sum, are not an advertorial service. It is in this light that we must interpret Bell's duties under the tariff.

> The tariff requires Bell to
> reject or discontinue as listings names which in the opinion of the Telephone Company will *mislead or deceive the public or confuse the public in identifying the listed party.* (Emphasis added.)

Bonnacci and CHOICE would have us limit our attention to the term "mislead or deceive the public" and thereby read into the tariff a duty to discontinue a listing because of misrepresentation of any nature. To do so would be to take the term out of context in the tariff. Considering the stated purpose of directory service, which this tariff is designed to effectuate, we read this provision to require Bell to delete those listings which "mislead or deceive . . . the public in identifying the listed party."

Because the Commission found no public confusion respecting the listee's identity, we must hold that Bell did not violate its tariff when it refused to delete the listing.

Accordingly, the Commission order is reversed.[2]

---

[2] Due to our resolution of this matter, we find it unnecessary to discuss Neary's other arguments in support of reversal.

### ORDER

The Pennsylvania Public Utility Commission order in C-79030771, entered June 19, 1981, is hereby reversed.